# In the United States Court of Federal Claims

Case No. 08-349C
FOR PUBLICATION
FILED: September 28, 2012

* * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| CHARLES J. RUSSELL, | * | Motion for Judgment on the |
|  | * | Administrative Record; |
| *Plaintiff,* | * | Arbitrary and Capricious |
|  | * | Standard of Review; |
|  | * | Substantial Evidence, |
| THE UNITED STATES, | * | Physical Evaluation Board; |
|  | * | Disability Rating; 10 U.S.C. |
| *Defendant.* | * | § 1201; 38 C.F.R. § 4.130. |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * *

*John B. Wells*, Law Office of John B. Wells, Slidell, LA, for Plaintiff.

*Timothy P. McIlmail*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Kirk T. Manhardt*, Assistant Director, Department of Justice, Washington D.C., and LCDR *Kathleen L. Kadlec*, Office of the Judge Advocate General, Washington Navy Yard, D.C., Of Counsel, for Defendant.

## OPINION AND ORDER

**SMITH, Judge.**

In this case, the Court previously found that the Navy failed to employ medically accepted procedures for identifying Post Traumatic Stress Disorder ("PTSD"), and held that the Navy's decision not to find PTSD was arbitrary, capricious, and not supported by substantial evidence. *Russell v. United States*, 102 Fed. Cl. 9 (2011) ("*Russell*"). The question now before this Court is whether Plaintiff is entitled to any remedy. Defendant argues that Plaintiff Sergeant Russell is not entitled to a remedy of military retirement because the Court's opinion does not hold that the Navy's finding that Plaintiff was fit for duty in spite of PTSD is not arbitrary and capricious. After full briefing, oral argument and careful consideration, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record. While the Court's sympathy is with the Plaintiff, the law unfortunately is not.

## **BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff Sergeant Charles J. Russell joined the United States Marine Corps in April 1992, and was honorably discharged in April 1996, after serving in combat operations in Somalia. Plaintiff remained in the Selected Marine Corps Reserve and was activated for Operation Iraqi Freedom in March 2003. On May 17, 2003, Plaintiff was injured while providing protection for a convoy, when a flash/bang grenade exploded in his hand. As a result of the explosion, a portion of Plaintiff's right little finger had to be amputated, and the knuckles of his right index and little fingers were broken. Plaintiff was subsequently discharged in December 2003.

In 2008, Plaintiff was treated for PTSD by the Department of Veterans Affairs ("VA"), which gave him a 60 percent disability rating. Plaintiff filed suit on May 14, 2008, seeking determination of eligibility for disability benefits. The Court granted defendant's unopposed motion to refer the matter to Navy's Physical Evaluation Board (PEB). The informal PEB unanimously found that on his date of separation, Plaintiff was fit for duty despite the permanent nature of his hand injury, and that Plaintiff had not shown any symptoms of PTSD. On appeal, the formal PEB found that Plaintiff was not fit for duty due to the hand injury. Nonetheless, the PEB rated Plaintiff's total disability rating at zero percent, and found no evidence of PTSD at the time of separation. The Director of the Navy's Council of Personnel Boards upheld these findings.

In his amended complaint, Plaintiff challenged the finding of the formal PEB that on his day of separation, he had not shown any symptoms of PTSD, and that he was unfit for continued service due to his hand injury. Plaintiff also challenged the PEB's disability rating, both in regard to the hand injury and to Plaintiff's PTSD condition.

In its previous opinion, this Court affirmed the PEB's findings in regard to the hand injury, but found that "the massive weight of the evidence" indicated that the failure of the Navy to find PTSD was "arbitrary, capricious, and not supported by substantial evidence." *Russell,* 102 Fed. Cl. at 17. Thereafter, the Court requested briefs from the parties regarding possible remedies. *Id.* Each party filed motions for summary judgment, and made oral arguments in New Orleans, LA. The case is now ripe for decision.

## **STANDARD OF REVIEW**

The decision of the Secretary to grant or deny disability retirement is subject to a deferential standard of review. The Court is limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations. *Craft v. United States*, 544 F.2d 468, 473 (Ct. Cl. 1976). In order to do so, the Court must determine whether the decision was based on the consideration of all the relevant factors and whether there was a clear error of judgment. *Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

---

[1] A full recitation of the Facts can be found in *Russell*, 102 Fed. Cl. at 10-11.

Sections 1201 and 1204 of Title 10 of the United States Code mandate application of the Veterans Administration Schedule for Rating Disabilities ("VASRD") by the Secretary of the Navy in determining disability ratings. *McHenry v. United States*, 367 F.3d 1370, 1378-79 (Fed. Cir. 2004) (citations omitted). While the Secretary cannot reduce a VASRD disability rating, he can make upward departures from the applicable ratings. *Id.* at 1379. When the circumstances of a case are such that two percentage evaluations could be applied, the higher percentage is assigned only if the service member's disability more nearly approximates the criteria for that rating. SECNAVINST 1850.4E. Otherwise, the lower rating is assigned. SECNAVINST 1850.4E. After consideration of data, if there remains reasonable doubt as to which rating should be applied, doubt is resolved in the service member's favor. SECNAVINST 1850.4E.

## DISCUSSION

Defendant argues that notwithstanding the Court's finding that the Navy acted arbitrarily and capriciously in failing to find PTSD, Plaintiff is not entitled to any remedy because the Court's decision held that Navy's finding that Plaintiff was fit for duty in spite of PTSD. Defendant further argues that nothing in the record establishes that Plaintiff suffered from the requisite "occupational and social impairment" at the time of the determination required by 38 C.F.R. § 4.130 for a 30 percent rating.

Plaintiff responds by reiterating that there is significant evidence in the record confirming the existence of the PTSD. Plaintiff relies heavily on this Court's finding that the Navy's failure to find PTSD was arbitrary and capricious. However, despite Plaintiff's suggestion to the contrary, this Court did not find the Navy's fitness finding arbitrary and capricious; it only found the failure to find PTSD arbitrary and capricious. *Russell* 17; Transcript of Oral Argument ("Tr.") at 13:1-9, May 30, 2012.

### A. 10 U.S.C. § 1201(a) – Retirement of Regulars and Members on Active Duty

The Court begins its analysis by turning to 10 U.S.C. § 1201, which governs disability claims by service members. Under §1201(a), the Secretary may retire a member "upon a determination by the Secretary concerned that a member . . . is unfit to perform the duties of the member's office, grade, rank, or rating. . . ." Therefore, in order for Plaintiff to qualify for retirement, Plaintiff must be found unfit for duty. The PEB found that Plaintiff was not unfit due to PTSD, therefore the Court must decide whether this finding was arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations.

In its previous decision, this Court noted that PTSD is a delayed onset disease, and that symptoms are frequently not apparent until at least six months following the triggering incident. *Russell,* 102 Fed. Cl. at 15-16. The most likely triggering event—Plaintiff's injury arising from the exploding hand grenade—occurred only seven months prior to discharge. *Id.* However, there is substantial evidence in the record supporting the finding of the formal PEB that Sergeant Russell "was not unfit due to PTSD," notwithstanding the Court's previous holding that the Navy's failure to diagnose Plaintiff with PTSD was arbitrary and capricious. Although the formal PEB eventually found Plaintiff unfit due to the physical condition of his hand, the evidence in the record indicates that the Navy was satisfied with the performance of the Plaintiff

3

at the time of discharge. Specifically, the September 30, 2003 fitness report described Plaintiff as a "highly qualified professional[]" who was "[d]iligent in all duties and assignments," and recommended that he be promoted. *See* Supplemental Administrative Record ("SAR") at 1678. Similarly, the certificate of commendation issued to Sergeant Russell two weeks after discharge commended Plaintiff for "having consistently performed his duties [as Chaplain Assistant at Camp Pendleton, California, from August 18, 2003, through October 30, 2003] in an exemplary and highly professional manner." SAR at 1679.

These reports support the finding by the PEB that Plaintiff did not suffer from a mental disability which was acute enough to warrant a finding of "unfitness." Not only did the reports conclude that Sergeant Russell was fit to perform his duties, the certificate of commendation recommended that he be promoted. Furthermore, when the Court asked Plaintiff's counsel whether there was any evidence showing Sergeant Russell was unable to function during his time in active service, Counsel conceded that there was "nothing" in the record. Tr. 29:5-7. In fact, Plaintiff's counsel conceded in oral argument that Sergeant Russell left the Navy because "he wanted to go home . . ." Tr. 28:5-12. Plaintiff's voluntary decision to leave active service is consistent with the fitness report and commendation, and with the formal PEB's finding that Plaintiff was not unfit due to PTSD at the time of separation.

Although this Court found the Navy's failure to find PTSD arbitrary and capricious, such a finding does not preclude the PEB from lawfully finding fitness to serve. As Defendant pointed out in oral argument, there are many service members currently serving who have been diagnosed with PTSD. Tr. 6:4-11. Although both the VA and the VASRD make disability determinations, the two systems serve different functions. The VA system was designed to provide veterans with the care they need, in the form of benefits and other services. Tr. 24:24-25:14. The VASRD, however, has the much narrower purpose of determining whether service members with disabilities are still able to serve. The VASRD gives the PEB the flexibility to allow service members with minor injuries to continue serving by according a zero percent rating to service members formally diagnosed with PTSD, but whose symptoms are not severe enough to interfere with occupational or social functioning or to require continuous medication. 38 C.F.R. § 4.130. The PEB, accordingly, rated Plaintiff at zero percent for PTSD, a finding which is consistent with the Navy's Fitness Report and Certificate of Commendation.

Moreover, this Court cannot second guess the Navy's rating of zero percent on the basis of the *subsequent* disability finding of 60 percent by the VA, notwithstanding the delayed onset nature of PTSD. The ordinary meaning of the statute is unambiguous: the only relevant judgment of a service member's fitness is that which is made at the time of separation. Under §1201(a), the Secretary may retire a member "*upon a determination* . . . that a member . . . is unfit . . ." (emphasis added). This understanding is also consistent with § 1201(b)(3)(B), which stipulates that the extent of Plaintiff's disability must be judged "at the time of the determination." *See also Barnick v. United States*, 591 F.3d 1372, 1381 (Fed. Cir. 2010) (holding that the extent of Plaintiff's disability "is to be determined at the time that he is found unfit for duty and separated from the service"). The Court accordingly holds that the formal PEB fitness finding was not arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations.

### B. 38 C.F.R. § 4.129 – Disability Ratings for Mental Disorders Due to Traumatic Stress

Plaintiff also seeks a disability rating of 50 percent on the basis of 38 C.F.R. § 4.129. Section 4.129 reads as follows:

> When a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50% and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted.

§ 4.129.  This regulation was incorporated in a memorandum adopted by the Department of Defense in 2008.  U.S. Dep't of Def., Policy Memorandum on Implementing Disability–Related Provisions of the National Defense Authorization Act (NDAA) of 2008 (Pub L. 110–181) attachment at 19 (2008).  It creates a baseline of 50 percent for members of the military released from service due to a mental disability incurred on duty.

Plaintiff concedes that § 4.129 does not apply retrospectively to service members such as Plaintiff, who were rated prior to the enactment of the NDAA in 2008.  Plaintiff, however, observes that the Court granted a settlement on the basis of § 4.129 in *Sabo v. United States*, 102 Fed. Cl. 619 (2011), despite the fact that the plaintiffs had been retired prior to 2008, and seeks a remedy of 50 percent on this basis.

Section 4.129 is unavailing for the following reasons.  First, although the Court has broad discretion in granting settlements, it is otherwise bound by the law, and cannot disregard the explicit statutory provision stating that the NDAA applies prospectively.  Sergeant Russell was dismissed prior to 2008, therefore the Court cannot apply § 4.129.  Second, under § 1201(a), the question of Plaintiff's disability rating does not come into play unless the Secretary makes an initial finding that the service member is "unfit," which was not the case in this instance.  If the finding is made that the service member is unfit, the Secretary may retire the member if he "*also* makes the determinations with respect to the member and disability specified in subsection (b)," such as a disability rating of 30 percent or more.  In this case, the formal PEB found that Plaintiff's PTSD was "not separately unfitting or contributing to the unfitting conditions," and granted Plaintiff a disability rating of zero percent.  SAR at 1686.  Finally, 38 C.F.R. § 4.129 applies only to service members released due to "a mental disorder that develops in service . . . ."  Sergeant Russell—unlike the plaintiffs in the *Sabo* settlement—was not found unfit for continued service on account of PTSD or any other mental disorder, but due to his hand injury.

## **CONCLUSION**

The Court is sympathetic to the Plaintiff's injury and pain suffered in service to America but is unable to determine the PEB's disability finding of zero percent was arbitrary, capricious, or not supported by the substantial evidence. While the procedures used to review the Plaintiff's condition were arbitrary and capricious with respect to finding PTSD, the finding that he was fit for duty, irrespective of PTSD, trumps that determination. For the reasons set forth above, the Court hereby **GRANTS** the Government's Motion for Judgment on the Administrative Record and **DENIES** Plaintiff's Cross-Motion for Judgment on the Administrative Record. The clerk is directed to enter judgment accordingly.

**It is so ORDERED**.

  s/ Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE